Randy LEHMAN, Petitioner,

v.

**CORPUS CHRISTI NATIONAL BANK, Respondent.**

No. C–2537.

Supreme Court of Texas.

March 21, 1984.

Rehearing Denied May 23, 1984.

Dodson, Nunley & Taylor, Rhonda Hardt, Hondo, Jack M. McGinnis, San Antonio, for petitioner.

Meredith & Donnell, M.W. Meredith, Jr., and Rebecca R. Kieschnick, Corpus Christi, for respondent.

SPEARS, Justice.

This case involves the construction of a will. The question before us is whether Randy Lehman, an adopted adult, qualifies as a "descendant" of Melvin Lehman, his adoptive father, within the terms of the will of W.F.L. Lehman, Melvin's father. The trial court held that he did not, and that Keith Lehman, Melvin's natural son, was entitled under the will to all of his deceased father's ¼ share in the income from the W.F.L. Lehman Estate Trust, set up by the will. The court of appeals affirmed. 665 S.W.2d 799. We reverse those judgments, and render judgment that Randy and Keith each qualify as descendants of Melvin under the will, and that each is entitled to a ⅛ share in the income from that trust.

W.F.L. Lehman, the testator, set up a testamentary trust under which ¼ of the net income went to Melvin Lehman, W.F. L.'s son. On Melvin's death, his share was to pass to his descendants, as that term is defined in the will. The will defines "descendants" as including "the children of the person designated, and the issue of such children, and such children and issue shall always include those who are adopted." Randy Lehman is the son by prior marriage of Marianne Bourque Lehman, Melvin Lehman's widow. Randy Lehman was twenty-six years old when Melvin adopted him. Keith Lehman contends, and the court of appeals held, that an adopted adult does not qualify as a remainderman under the will. We disagree.

The basic rule of interpretation governing will cases is that the court is to look for the testator's intent. *Gee v. Read*, 606 S.W.2d 677 (Tex.1980). If the will itself is unambiguous, the court should not go beyond the specific terms in search of that intent. *Frost National Bank v. Newton*, 554 S.W.2d 149 (Tex.1977). As this court said in the leading case of *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960), "[t]he duty of the Court is to construe the will from the words used therein... The intent must be drawn from the will, not the will from the intent." 339 S.W.2d at 888.

■ The definition of descendants in W.F.L. Lehman's will unambiguously covers Randy Lehman. The testator expressly provided that "such children and issue shall always include those who are adopted." The terms "child" or "children" when used in a testamentary instrument ordinarily cover sons and daughters of whatever age. 4 *Bowe-Parker: Page on Wills* § 34.14 (1961). We disapprove the holding in *Foster v. Foster*, 641 S.W.2d 693 (Tex.App.— Fort Worth 1982, no writ), to the extent it suggests that a reference to "children" in a will or trust excludes adults, unless the instrument itself clearly shows that the testator or settlor so intended. The definition of "descendants" in the will draws no age distinction between natural and adopted children. Thus, if adopted adults are incapable of taking, adult natural children would likewise be excluded from the class of beneficiaries.

Keith Lehman would have us announce a presumption that adopted adults are not included within the beneficiaries of a class gift in a testamentary instrument of someone other than the adoptive parents. We decline to do so. This presumption would be a form of the "stranger to the adoption" rule, which has now been rejected in Texas, *see Vaughn v. Gunter*, 458 S.W.2d 523 (Tex.Civ.App.—Dallas 1970), *writ ref'd n.r.e.* 461 S.W.2d 599 (Tex.1970), as well as in a majority of American jurisdictions considering the question. *See Elliott v. Hiddleson*, 303 N.W.2d 140, 144 (Iowa 1981). Any such presumption would be at best only a rule of construction that would yield to a clear expression of contrary intent. *Shriner's Hospital for Crippled Children v. Stahl*, 610 S.W.2d 147 (Tex.1980). Hence, the proposed rule would be ineffective in this case in which the class of beneficiaries unambiguously includes Randy Lehman. Moreover, such a rule would be contrary to the public policy of this state.

At the time of W.F.L. Lehman's death, under Article 46b–1, TEX.REV.CIV.STAT. ANN. (Vernon 1969), an adopted adult was "for every purpose, the child of his parent or parents by adoption as fully as though born of them in lawful wedlock." Act of June 19, 1947, ch. 428, § 5, 1947 Tex.Gen. Laws 1009, *repealed by* Act of June 15, 1973, ch. 543, § 3, 1973 Tex.Gen.Laws 1411, at 1458. The current law is no different. TEX.FAM.CODE ANN. § 16.55 (Vernon 1975).

The court of appeals based its holding on another part of the now-repealed Art. 46b–1. That article provided that an adopted adult "shall inherit from said parent or parents by adoption, as fully as though born of them in lawful wedlock." Act of June 19, 1947, ch. 428, § 5, 1947 Tex.Gen. Laws 1009 (repealed 1973). The court of appeals read this provision to mean that an adopted adult could inherit from, but not through, his adoptive parent. The court then construed W.F.L. Lehman's will in light of the statute, and gave Randy Lehman the same rights under the will that he would have had under the statute; in other words, because Randy could not inherit from W.F.L. through Melvin, neither could he take Melvin's share under W.F.L.'s will.

■ We hold that there was no need to look to outside law, because the will itself was clear. If there were such a need, however, the court of appeals' emphasis was misplaced. The provision as to inheritance was a limited exception to the general rule that adopted adults are to be treated as natural children "for every purpose." The laws of descent and distribution have no effect on the passing of property under a will, and are of little interpretive help. In fact, one reason a person executes a will is to modify or abrogate the way his property would pass by the laws of intestacy. As a result, construing a will in accordance with the intestacy statutes may actually be intent-defeating.

By way of cross-point, Keith Lehman complains that the trial court erred in excluding the testimony of M.W. Meredith Jr., the attorney who prepared W.F.L. Lehman's will. On bill of exception, Mr. Meredith said that, in his opinion, W.F.L. Lehman did not intend to include adopted adults within the class of descendants. The bill of exceptions also showed, however, that Mr. Meredith did not discuss with the testator the question of adopted adults.

■ The trial court was correct in excluding the testimony. W.F.L. Lehman's will is unambiguous. Thus, no speculation or conjecture regarding the intent of the testator is permissible. *Frost National Bank*, 554 S.W.2d at 153. Our decision in *Stewart v. Selder*, 473 S.W.2d 3 (Tex.1971), does not change the application of that rule to this case. In *Stewart*, we held that when a term in a will is capable of more than one construction, evidence of extrinsic facts is admissable to show that the testator intended the term to refer to a particular thing. Thus, in *Stewart*, extrinsic evidence was considered in determining whether the word "cash" as used in a will also referred to securities.

■ The instant case is different in two regards. First, Keith Lehman would use extrinsic evidence to show that his grandfather would not have intended Randy Lehman to be included, even though Randy is covered by the literal terms of the will. In *Stewart*, on the other hand, the evidence was used to show the meaning of a word. Second, Keith offered evidence not of facts, but only of the mere opinion of W.F.L.'s attorney. Our courts have long held in other contexts that a witness cannot testify to the state of mind of another person. *Graves v. Campbell*, 74 Tex. 576, 12 S.W. 238 (1889); *Taylor v. Lewis*, 553 S.W.2d 153 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); 2 R. Ray *Texas Law of Evidence Civil and Criminal* § 1428 (3d ed. 1980).

The judgments of the trial court and the court of appeals are reversed, and judgment is hereby rendered that Randy and Keith Lehman each take a ⅛ share in the income from the W.F.L. Lehman Estate Trust.