Fred Whittington HAGAMAN, Jr.; Betty Ann Long Hopper; Nancy Freeman; Sandra Lacaze; Janet Elliott; Kasey Hagaman; Korey Hagaman; and Holly Hagaman by her next friend, Fred Whittington Hagaman, Jr., Appellants,

v.

Martha Long MORGAN, Appellee.

No. 05–93–00676–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 1994.

Motion to Publish Granted Oct. 12, 1994.

Rehearing Denied Oct. 12, 1994.

## OPINION

BARBER, Justice.

This is a will dispute. Appellants appeal the summary judgment granted in favor of appellee. The trial court held that, as used in the will of Kathleen Whittington Hagaman (the Testatrix), the phrase "bodily issue" included an adopted adult. In a single point of error, appellants assert the trial court erred in so holding. Appellants do not claim the summary judgment evidence gave rise to an issue of material fact. Rather, they argue that the conclusion the trial court reached is the product of an erroneous application of the law to the undisputed facts. We disagree and affirm the trial court's judgment.

## FACTUAL BACKGROUND

The Testatrix executed her will on November 27, 1972 in Potter County, Texas. The Testatrix's will provided in relevant part as follows:

### V.

Upon termination of the life estate in my husband, Fred Whittington Hagaman, I give, devise and bequeath the remainder of my properties which were held by him as life tenant as follows:

a. To my children, Betty Anne Long Hopper, C.O. Long, Jr., Kathleen Hagaman Carson, and Fred Whittington Hagaman, Jr., share and share alike, for the natural life of each. . . .

b. If any of my children as named in Paragraph V-a preceding predecease me, the share of that child shall be, and I so give, devise and bequeath it, in absolute fee simple, property of that child's bodily issue, share and share alike, or their bodily issue in their stead, per stirpes.

c. Upon termination of the life estate of each of my children, I give, devise and bequeath the remainder thereof to that child's bodily issue, share and share alike, or their bodily issue in their stead, per stirpes.

John L. Oxley, Madisonville, Stanley J. Krist, Eugene L. Smith, Houston, George M. Adams, Kemp, for appellants.

John B. Kyle, Jack Pew, Jr., Dallas, for appellee.

Before LAGARDE, BARBER and WHITTINGTON, JJ.

On June 6, 1975, the Testatrix executed a codicil to her will in Potter County, Texas. The codicil provided in relevant part:

> Paragraph V-b of my Last Will and Testament dated November 27, 1972, is deleted therefrom and a new paragraph V-b in words and intent as follows is my will and intent:
>
> "b. If any of my children as named in Paragraph V-a preceding predecease me, the share of that child shall be, and I so give, devise and bequeath it, in absolute fee simple, property of that child's bodily issue, share and share alike, or their bodily issue in their stead, per stirpes; provided, however, that Martha Long, the adopted daughter of C.O. Long, Jr. shall have a life estate in the share of C.O. Long, Jr. (if he predecease me) with the remainder of that share to Martha's natural children, share and share alike, or their issue in their stead, per stirpes."

The Testatrix's four children survived her. Thus, paragraph V-b of the will never became effective.

Appellants Fred Whittington Hagaman, Jr. and Betty Ann Long Hopper are the children of the Testatrix. Appellants Nancy Freeman, Sandra LaCaze, and Janet Elliott[1] are the biological children of Betty Ann Long Hopper and the grandchildren of the Testatrix. Appellants Kasey Hagaman, Korey Hagaman, and Holly Hagaman are the biological children of Fred Whittington Hagaman, Jr. and the grandchildren of the Testatrix.

The only biological child of C.O. Long was Priscilla Ann Long, who was born on July 14, 1953 and died unmarried on June 8, 1972. None of the parties assert that Priscilla Ann Long does or should take under the will.

Martha Long Morgan, appellee,[2] is the biological daughter, by a previous marriage, of C.O. Long's wife. C.O. Long adopted appellee on June 29, 1972. At the time C.O. Long

adopted her, appellee was twenty-five years old.

## I. THE WILL

### A. Applicable Law

■ The fundamental rule for interpreting a will requires that the testator's intent be determined by looking to the provisions of the document. *Perfect Union Lodge No. 10, A.F. & A.M. v. Interfirst Bank,* 748 S.W.2d 218, 220 (Tex.1988). A reviewing court may not redraft a will or add provisions to it under the "guise of construction in order to effectuate some presumed intent of the testator." *Id.* When the testator's intent is apparent on the face of the will, extrinsic evidence is not admissible to show a contrary meaning. *Odeneal v. Van Horn,* 678 S.W.2d 941, 942 (Tex.1984) (per curiam).

■ If the language used in the will is clear and unambiguous, "construction of the will is unnecessary; the court will only enforce the instructions of the testator." *Wilkins v. Garza,* 693 S.W.2d 553, 556 (Tex. App.—San Antonio 1985, no writ); *see Henderson v. Parker,* 728 S.W.2d 768, 770 (Tex.1987) ("In the absence of ambiguity, we must construe the will based on the express language used."); *Sanderson v. First Nat'l Bank,* 446 S.W.2d 720, 723 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.) (When a will is unambiguous, "[t]he court may not add to, subtract from, amend, correct, reform, revise, or rewrite the will even if the court might think that the testator was unreasonable, unjust or unwise in bequeathing and devising his property as he did."). The true question is not what the testator intended to write, but the meaning of the words actually used. *Kokernot v. Denman,* 708 S.W.2d 921, 924 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

■ The law as it existed at the time a will was executed should be used in interpreting a will. *See Cutrer v. Cutrer,* 162 Tex. 166, 171–72, 345 S.W.2d 513, 516 (1961) (hold-

---

**1.** Elliott's name is also spelled in the record as Elliot.

**2.** Claims and counterclaims involving Kathleen Hagaman Carson, the Testatrix's daughter, and Tracy Carson, Terry S. Carson, and Gary Don

Carson, the biological children of Kathleen Hagaman Carson and grandchildren of the Testatrix, were dismissed by agreement. These individuals support appellee.

ing that adoption statute in effect at the time the will was executed should be used to determine status of adopted children as "children"); *Van Hoose v. Moore,* 441 S.W.2d 597, 617 (Tex.Civ.App.—Amarillo 1969, writ ref'd n.r.e.); *Davis v. Corabi,* 421 S.W.2d 677, 681 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.). A validly executed codicil can republish a will and make the will "speak" from the date of the codicil. *Aven v. Green,* 159 Tex. 361, 364, 320 S.W.2d 660, 662 (1959); *Jackson v. Thompson,* 610 S.W.2d 519, 523 (Tex. Civ.App.—Houston [1st Dist.] 1980, no writ). The will and codicil(s) are construed as one document. *Aven,* 159 Tex. at 364, 320 S.W.2d at 662; *Jackson,* 610 S.W.2d at 523.

### B. Application of Law to Facts

Appellee relies on section 16.09(e) of the family code to support her argument that adopted adults are included within the meaning of "bodily issue." Appellants assert that section 16.09(e) applies to adopted children, not to adopted adults. Appellants further claim that section 16.55 of the family code, which deals with adopted adults, makes no provision for an adopted adult to inherit from and through the adoptive parents as though the child were the biological child of the parents.

We agree with appellants that section 16.09(e) deals with adopted children. Section 16.09(e) states "[t]he terms 'child,' 'descendant,' 'issue,' and other terms indicating the relationship of parent and child include an adopted child unless the context or express language clearly indicates otherwise." TEX. FAM.CODE ANN. § 16.09(e) (Vernon Supp. 1994).[3] The family code has specifically defined child to mean a person under eighteen years of age who is not married nor had his disabilities of minority removed. TEX.FAM.

CODE ANN. § 11.01(1) (Vernon Supp.1994).[4] An adult is any other person. *Id.*

Appellee was twenty-five years of age at the time she was adopted. The family code has specific provisions dealing with the adoption of adults. *See* TEX.FAM.CODE ANN. §§ 16.51–16.55 (Vernon 1986 and Vernon Supp.1994). The provisions of section 16.09(e) are not included within the provisions regarding the adoption of adults. They are, therefore, persuasive at most.

■ Having said this, however, we disagree that the sections dealing with the adoption of adults made no provision for an adopted adult to inherit from or through the adoptive parents. At the time the Testatrix executed her will (November 27, 1972), an adopted adult was "for every purpose, the child of his parent or parents by adoption as though born of them in lawful wedlock." Act of June 19, 1947, 50th Leg., R.S., ch. 428, § 5, 1947 Tex.Gen.Laws 1009, 1010 (formerly TEX. REV.CIV.STAT.ANN. art. 46b–1), *repealed by* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 3, 1973 Tex.Gen.Laws 1411, 1458 (enacting Texas Family Code). At the time the Testatrix executed the codicil (June 6, 1975), an adopted adult was the son or daughter of the adoptive parents for inheritance purposes. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex.Gen.Laws 1411, 1432, *amended by* Act of June 19, 1975, 64th Leg., R.S., ch. 476, § 43, 1975 Tex.Gen.Laws 1253, 1270. The Texas Legislature amended section 16.55 effective September 1, 1975, to state that an adopted adult was the son or daughter of the adoptive parents for all purposes. *See* Act of June 19, 1975, 64th Leg., R.S., ch. 476, § 43, 1975 Tex.Gen.Laws 1253, 1270 (current version at TEX.FAM.CODE ANN. § 16.55 (Vernon 1986)). Rather than limit the effect of an adult adoption, we view this

**3.** At the time the Testatrix executed her will, article 46a, section 9 of the Texas Revised Civil Statutes did not contain the language found in section 16.09(e) of the family code. *See* Act of May 7, 1951, 52nd Leg., R.S., ch. 249, § 3, 1951 Tex.Gen.Laws 388, 390, *repealed by* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 3, 1973 Tex.Gen.Laws 1411, 1458 (enacting Texas Family Code). However, when the Testatrix executed the codicil in 1975, section 16.09(c) of the Texas Family Code contained the identical language found in the current version of 16.09(e). *See* Act

of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex.Gen.Laws 1411, 1431. Although there have been several amendments to section 16.09, the only change to subsection (c) was to relabel it as subsection (e). We will, therefore, refer to this subsection as 16.09(e).

**4.** "Child" has an expanded meaning in the context of child support. This expanded meaning is not relevant to this case.

as an expansion of the relationship between the adopted adult and the adoptive parents. We, therefore, conclude that an adopted adult is a son or daughter of the adoptive parents for purposes of inheritance. *Cf. Lehman v. Corpus Christi Nat'l Bank,* 668 S.W.2d 687, 689 (Tex.1984).

The question before us now is whether terms such as "bodily issue," when used in a will, without definition, include adopted adults. Terms such as "issue" or "bodily issue" generally refer to those born by blood. *See Cutrer,* 162 Tex. at 172, 345 S.W.2d at 517; *Diemer v. Diemer,* 717 S.W.2d 160, 162 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Since at least 1947, Texas law has provided that an adopted adult should be considered the son or daughter of the adoptive parents as though born of them for all purposes.[5] *See* TEX.FAM.CODE ANN. § 16.55 (Vernon 1986); Act of June 19, 1947, 50th Leg., R.S., ch. 428, § 5, 1947 Tex.Gen.Laws 1009 (codified at TEX.REV.CIV. STAT.ANN. art. 46–b, § 5), *repealed by* Act of June 15, 1973, 63rd Leg., R.S., ch. 543, § 3, 1973 Tex.Gen.Laws 1411, 1458 (enacting the Texas Family Code); *Lehman,* 668 S.W.2d at 689. "Historically it has been the efforts of both the legislature and the court to bring adopted children to an equal level of legal dignity with natural born children."[6] *Hunter v. Koisch,* 798 S.W.2d 857, 860 (Tex.App.— Beaumont 1990, writ denied). The public policy of Texas is to treat adopted adults as though they were biological descendants. *See Lehman,* 668 S.W.2d at 688–89.[7] Therefore, we hold that terms such as "issue" and "bodily issue" as used in a will include adopted adults unless adopted adults are expressly excluded from the meaning of the terms.[8]

Appellants assert that paragraph V-b demonstrates the Testatrix's intent to limit passing of the remainder interests in her estate to her blood descendants. First, we do not reach paragraph V-b. Paragraph V-c is the operative paragraph because none of the Testatrix's children predeceased her and it is clear and unambiguous. Further, we disagree with appellants' interpretation of paragraph V-b. Paragraph V-b provides that appellee take a life estate in one quarter of the Testatrix's estate with the remainder to go to appellee's "natural children." Appellee's children would not be blood relatives of the Testatrix any more than appellee is under appellants' interpretation. Thus, appellants' position is not supported by the terms

---

**5.** The Texas Supreme Court's observation with respect to the legal status of adopted children is instructive by analogy and with respect to public policy.

Before 1951, the general rule in Texas was that an adopted child was not entitled to property conveyed or devised to the natural children of the adoptive parent unless the intent to include was indicated by additional language or circumstances. This presumption changed by the passage of the 1951 amendment to the adoption statutes.

*Ortega v. First RepublicBank Fort Worth, N.A.,* 792 S.W.2d 452, 454 (Tex.1990) (citations omitted); *see also Vaughn v. Gunter,* 458 S.W.2d 523, 527 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam,* 461 S.W.2d 599, 600 (Tex.1970) ("We approve the holding of the court of civil appeals that under the 1951 amendment ... in the absence of words indicating a contrary intention the unqualified words 'children' and 'child' include an adopted child.").

**6.** Several cases have treated adopted persons differently from biological descendants. However, most of those cases are distinguishable because they were interpreting wills or trust instruments executed prior to 1947. *See, e.g., Cutrer,* 162 Tex. at 168–69, 345 S.W.2d at 516 (trusts created in

1937, 1941 and 1921); *Murphy v. Slaton,* 154 Tex. 35, 38, 273 S.W.2d 588, 590 (1954) (will executed in 1928); *Tindol v. McCoy,* 535 S.W.2d 745, 746 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.) (will executed in 1914, codicil executed in 1917).

**7.** In *Lehman,* the supreme court looked to the definitions included in the will. The court stated that the laws of descent and distribution were of little interpretive value in the face of the definitions contained in the will. *Lehman,* 668 S.W.2d at 689. In this case, the Testatrix did not define the terms used in her will. We, therefore, will look to the Texas Family Code for assistance. *See Cutrer,* 162 Tex. at 171–72, 345 S.W.2d at 516; *Van Hoose,* 441 S.W.2d at 617; *Davis,* 421 S.W.2d at 681 (all endorsing application of prevailing law at time of execution of will or codicil in interpreting terms of will or codicil).

**8.** We are not deciding whether an adopted adult has a right to intestate inheritance from the relative of an adoptive parent. Our opinion is strictly limited to the use of the terms "issue" and "bodily issue" in a will executed after 1947 which does not define those terms or specifically exclude adopted adults.

of the will. Paragraph V-b would have treated appellee as the Testatrix's own biological daughter in the event that her son, C.O. Long, had predeceased her. We take this as a clear indication that the Testatrix intended that appellee take under her will whether it be under paragraph V-b or V-c. The differing treatment of appellee under paragraphs V-b and V-c of the will does not give rise to an ambiguity under our interpretation of the phrase "bodily issue."

## II. LAW OF THE CASE

■■■■■ At summary judgment and on appeal, appellee asserts that she should prevail on the basis of the law of the case doctrine. "The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex.1986). The doctrine applies only to questions of law. *Id.* When pleadings or facts have changed substantially between adjudications, the doctrine may not apply. *See id.*

Appellee relies on the unpublished opinion of the Waco Court of Appeals reversing a summary judgment that construed the subject will adversely to appellee. *See Morgan v. Hagaman*, No. 10–88–244–CV (Tex.App.—Waco August 31, 1989, writ denied) (not designated for publication). The Waco Court of Appeals held that the summary judgment movants failed to establish their entitlement to summary judgment as a matter of law.[9] It did not adjudicate any other issues. Thus, it can hardly be said that the Waco court's ruling is dispositive of any issue before this

Court or that was before the trial court. Therefore, the trial court's judgment cannot be supported under the law of the case doctrine.

## III. TIMELINESS OF APPELLANTS' APPEAL BOND

In a cross-point of error, appellee asserts this Court's motions panel erred in granting appellants' motion for extension of time to file appeal bond. We disagree.

■■■■■ Rule 41 of the Texas Rules of Appellate Procedure governs extensions of time to file cost bonds. Rule 41 allows an appellate court to consider a motion for extension of time to file a cost bond or cash deposit if the motion is filed within fifteen days of the due date of the bond or deposit. TEX.R.APP.P. 41(a)(2). The motion for extension of time must set forth a reasonable explanation for the need for the extension. *Id.* A reasonable explanation is "any plausible statement of circumstances indicating that failure to file within the [required] period was not deliberate or intentional, but was the result of inadvertence, mistake or mischance." *See Garcia v. Kastner Farms, Inc.*, 774 S.W.2d 668, 669 (Tex.1989) (quoting *Meshwert v. Meshwert*, 549 S.W.2d 383, 384 (Tex.1977)). "Any conduct short of deliberate or intentional noncompliance qualifies as inadvertence, mistake or mischance even if that conduct is professional negligence." *McLendon v. McLendon*, 862 S.W.2d 662, 668 (Tex.App.—Dallas 1993, writ denied).

■■■■ Appellants timely filed[10] a motion for extension of time explaining that their

---

9. The same parties were involved in the Waco litigation. However, at least on appeal, they were aligned differently. The plaintiffs, who were the movants for summary judgment, included Kasey Hagaman, Korey Hagaman (spelled Karey in the opinion from the Waco Court), Holly Hagaman by her next friend Fred Whittington Hagaman, Jr., Nancy Freeman, Sandra LaCaze, and Janet Elliott (spelled Elliot). The defendants were Martha Long Morgan, Kathleen Hagaman Carson, Terry S. Carson, Tracy Carson, Gary Don Carson, Betty Ann Long Hopper (spelled Hooper), and Fred Whittington Hagaman, Jr. The Waco Court's opinion identifies Martha Long Morgan and Kathleen Hagaman Carson as the appellants in that case. In the case before us, appellants' brief indicates that in

the previous case, Betty Ann Long Hopper and Fred Whittington Hagaman, Jr., formally aligned themselves, by cross-claim, with their children, the plaintiffs in the suit reviewed by the Waco Court.

10. In fact, it is the position of this Court that the bond was filed prematurely. This Court's motions panel concluded that the subject summary judgment was interlocutory until certain other claims were disposed of. Appellee asserts that we were wrong in finding that the subject order was interlocutory until other claims and cross-claims were resolved. We need not address that issue because it is not necessary to our disposition of appellee's cross-point of error.

failure to timely file the bond was the product of miscommunication among counsel and clients. The motions panel found the explanation reasonable and we agree. We overrule appellee's cross point of error.

## DISPOSITION

We overrule appellants' point of error and appellee's cross-point of error. We affirm the trial court's judgment.