

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE ESTATE OF | § | No. 08-23-00019-CV |
| RAMONA LEDEZMA, | § | Appeal from the |
| DECEASED. | § | County Court at Law No. 2 |
| | § | of Webb County, Texas |
| | § | (TC# 2021-PB-9000076-L2) |

## <u>MEMORANDUM OPINION</u>

This appeal concerns the estate of Ramona Ledezma.[1] On June 18, 2023, Appellant Juan Jesus Ledesma filed an application to probate the Decedent's will as a muniment of title in Webb County.[2] The trial court issued an order admitting the will to probate as muniment of title. Almost four months later, Appellees Maria Isabel Vasquez, Celia Escamilla, and Maria Guadalupe Soto filed an original declaratory action objecting to the probate of the Decedent's will as muniment of title due to ambiguity in the will. The trial court granted declaratory judgment Appellees' favor.

---

[1] In his brief, Appellant spells the decedent's surname "Ledesma." However, we refer to the decedent by "the Decedent" or "Ledezma," as reflected on her death certificate, the original application to probate will as muniment of title, and the declaratory judgment. We refer to the Decedent's husband, Francisco, using the "Ledesma" spelling, as reflected in the Will and the record.

[2] This case was transferred from the Fourth Court of Appeals pursuant to a Supreme Court of Texas docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

In two issues, Appellant contends the trial court lacked jurisdiction to consider Appellees' declaratory action because it was filed after the court's plenary jurisdiction expired, and even if the trial court had jurisdiction, the trial court erred in its findings of fact and conclusions of law supporting the declaratory judgment. For the following reasons, we reverse and render judgment in Appellant's favor.

### FACTUAL AND PROCEDURAL BACKGROUND

Decedent was born in Mexico in 1929. She married Francisco Rene Ledesma (Husband), and when she became pregnant with their first child in 1966, the couple moved to Laredo, Texas. Decedent's husband predeceased her, but she was survived by six children. At the time of her death in 2021, Decedent resided on Juarez Avenue, the property central to this dispute (the Juarez Property). There are three structures on the Juarez Property: a single-family home (where Decedent resided), a free-standing apartment (where Appellant resided), and a building containing restrooms that service the commercial building behind the Juarez Property.[3] The commercial building behind the Juarez Property houses Appellant's personal business.

Appellant filed an application to probate Decedent's will—which was the joint will of Decedent and her late husband (the Will)—as muniment of title on June 18, 2021. Although Husband died in 2014, the Will was never probated. The application stated that the Decedent died on April 2, 2021, in Laredo, Texas at the age of 91. The Decedent's property included vehicles, bank accounts, personal property, and the Juarez Property. The application further stated that the Decedent left a valid will, which was executed on March 18, 2011, and never revoked.

---

[3] It appears from the record that the structure housing the restrooms for the commercial property is only partially located on the Juarez Property. The record is ambiguous as to the exact placement.

2

On July 16, 2021, the trial court entered an order admitting the Will to probate as muniment of title and specifying that "upon the payment of taxes, if any are due, [the] estate shall be dropped from the docket" (the Order). The Will contains the signatures of Decedent, Husband, and two witnesses—Elizabeth Vasquez and Claudia Ledesma (the Decedent's granddaughters). The document was notarized by Diana F. Alvarado.

On November 18, 2021, Appellees filed their first original declaratory action and objection to probating the Will as muniment of title.[4] In the subsequent amended petition, Appellees sought a declaration under Chapter 37 of the Texas Civil Practice and Remedies Code that the Will was ambiguous as to the Decedent because it was a joint will and therefore could not be probated as muniment of title; instead, extrinsic evidence must be considered to determine the Decedent's intent, which was for her children to share equally in the Juarez Property value.

Arguing that the trial court's plenary jurisdiction had expired, Appellant objected to the declaratory action. Over Appellant's objection, the trial court held a hearing on Appellees' declaratory judgment claim and objection to the muniment of title. Witnesses at the hearing testified about the Decedent's intent with regard to the Juarez Property, the circumstances surrounding the Will's execution, and the Decedent and Husband's language abilities.[5] The trial

---

[4] Appellees filed a first amended petition adding a bill of review as a cause of action. However, the bill of review was not considered by the trial court and is not at issue in this appeal.

[5] Both witnesses to the Will testified at the hearing. Elizabeth testified that she recognized her grandparents' signatures on the Will but was not present when Decedent signed. Although the Will states that Claudia and Elizabeth signed at the same time Decedent and Husband signed, Elizabeth testified that only she and her grandfather were present when she signed the Will in the living room of her grandparents' home. Elizabeth did not testify regarding whether Decedent's signature was on the Will at the time she signed in the presence of her grandfather. She testified that although the Will was in English, neither Decedent nor her grandfather could speak or read the English language, and no one was present in the room to translate the Will. The Will did not include a certificate of translation. When asked whether her grandparents ever discussed their intended disposition of the house on the Juarez Property, Elizabeth responded that her grandfather told her "the property was going to be my uncle's but with the understanding that all his siblings were gonna get their equal parts."

Claudia, Appellant's daughter and the Will's second witness, testified that she recognized her grandparents' signatures on the Will. She testified that Decedent did not speak or understand English, but her grandfather "understood English very well . . . and was able to read it." Appellant also testified that his father understood the

3

court also heard testimony regarding various inconsistencies and errors in the Will, which are further discussed below.

On August 29, 2022, the trial court entered a declaratory judgment sustaining Appellees' objections to probating the Will as a muniment of title and entered the following 15 findings:

1.  The *Order Admitting Will to Probate as a Muniment of Title* (the "Order") was signed by the Court on July 16, 2021.

2.  The Court, per the Order, retained jurisdiction of the Estate, stating that this Cause remains on the Court's docket until taxes are paid.

3.  No proof of tax payment has been filed.

4.  This Cause remains on the Court's docket and the Court retains jurisdiction over the Probate, the Parties, and the Estate.

5.  The Court retains plenary power to render this Declaratory Judgment.

6.  Decedent intended to transfer property.

7.  Decedent visited attorney Julio Garcia, Jr. at his office for probate planning purposes. The Court is familiar with Mr. Garcia's written work-product because Mr. Garcia has filed many pleadings, motions, orders and other documents with this Court. No person testified that an original, an original copy, a signed copy, a file-stamped copy or any version of the Purported Will was found at Julio Garcia, Jr.'s office. The Court determines that Mr. Julio Garcia did not prepare the Purported Will.

English language. Claudia testified that she signed the Will at the office of Attorney Julio Garcia in the presence of her grandparents, Elizabeth, and the notary. She did not remember if someone was available to translate the Will from English to Spanish.

Witnesses for the Appellees testified that Decedent and her husband had prepared a version of the Will in Spanish, which indicated the value of the property was to be shared between the siblings. Appellant testified that he was unaware of a version in Spanish. He testified that after his father's death, he took Decedent to Mr. Garcia's law office because "[s]he wanted to change it a hundred percent to my name." When asked what Decedent wanted to change to one hundred percent, Appellant responded he did not know but Decedent wanted everything to be in his name without his father's name. He testified that when he went to the attorney's office, he and Decedent spoke to Julio Garcia about "[p]apers [that] needed to be changed to [his] name." He could not specify what papers needed to be changed.

Appellant testified that he and Decedent tried to return to Mr. Garcia's office to execute the papers, but they were unable to do so because of pandemic restrictions. Appellee Vasquez testified that she knew Decedent and Appellant visited the attorney to "change the house" because Decedent was receiving government "palomita" assistance, and she was afraid "the providers would take over." According to her testimony, she thought only the title of the house would change but Decedent's intent to devise the value of the Juarez Property in equal parts to the siblings remained the same.

8.   Decedent did not speak, write, or understand the English Language. Decedent had the equivalent of a second-grade education, which she completed in Mexico.

9.   A Spanish version of Decedent's will existed. It has not been found and its whereabouts are unknown.

10.  The Purported Will was not translated to Decedent when she allegedly signed it. There was no evidence that the Purported Will was ever translated to her. There is no certificate of translation in the Purported Will.

11.  The Purported Will Probated was neither signed in front of the notary nor in attorney Garcia's office as reported in the Purported Will.

12.  Decedent did not sign the Purported Will in front of her granddaughter Elizabeth Vasquez.

13.  Decedent's husband signed the Purported Will in front of his granddaughter Elizabeth Vasquez, but the Purported Will was not translated to him.

14.  The Purported Will contained several, substantive mistakes, which render the Purported Will ambiguous and deficient to transfer or convey real property as a muniment of title.

15.  Decedent's intentions to transfer this property during her life were not finalized.

The trial court ultimately concluded that the deficiencies in the Will rendered it ambiguous and insufficient to convey title to real property. Concluding that the Will failed as a matter of law, the trial court ordered Decedent's estate to pass by intestacy. Appellant filed a motion for new trial, which was denied by operation of law. This appeal followed.

## ISSUES ON APPEAL

In two issues, Appellant challenges the trial court's jurisdiction and the legal and factual sufficiency of 11 of the trial court's 15 findings.[6] We find that the trial court had jurisdiction, but

---

[6] Appellant took issue with all of the trial court's findings of fact and conclusions of law except for 1, 3, 6, and 15.

it erred in holding that the Will was ambiguous and insufficient to convey title to real property as a matter of law. Below, we analyze the question of jurisdiction as well as the dispositive points of error pertaining to the challenged trial court's findings of fact and conclusions of law. *See* TEX. R. APP. P. 47.1 (requiring courts of appeals to hand down written opinions that are "as brief as practicable," addressing issues "necessary to the final disposition of the appeal").

## THE TRIAL COURT'S JURISDICTION

In Appellant's first issue, he contends the trial court abused its discretion by granting declaratory relief after its plenary power expired. The parties center their arguments around the finality of the Order.

### A. Appellant's position

According to Appellant, the Order was a final, appealable judgment, and the trial court's plenary power expired 30 days after it was signed. Appellant relies on the Texas Rules of Civil Procedure for the proposition that the trial court's plenary power expired 30 days after issuing the Order. *See* TEX. R. CIV. P. 306(a) (appellate timeline begins 30 days after a final judgment is signed); TEX. R. CIV. P. 329b(b) (motions to modify, correct, or reform a judgment extend the trial court's plenary powers). Appellant further relies on the statute allowing a will to be admitted to probate as muniment of title, which provides: "A court may admit a will to probate as muniment of title if the court is satisfied that the will should be admitted to probate and the court: (1) is satisfied that the testator's estate does not owe an unpaid debt, other than any debt secured by a lien on real estate; or (2) finds for another reason that there is no necessity for administration of the estate." TEX. ESTATES CODE ANN. § 257.001. The Order recites both elements from the Estates Code.

Appellant's theory of the case is premised on the distinction between a probate order, which requires the administration of an estate, and an order probating a will as muniment of title, which avoids administration. Because the Will was probated as muniment of title, Appellant contends the trial court necessarily found that there were no debts owed—including taxes—and the Order was a final judgment. In support of his position, Appellant cites *Smalley v. Smalley*, 436 S.W.3d 801, 806 n.9 (Tex. App.—Houston [14th Dist.] 2014, no pet.), a case in which our sister court of appeals distinguished plenary jurisdiction from continuing jurisdiction for the purpose of estate administration. In *Smalley*, the court found that a probate court's "continuing jurisdiction does not alter the court's plenary power over final judgments." *Id.* In Appellant's view, because the Order settled the issues of debts owed and administration, the trial court's jurisdiction expired 30 days later on August 15, 2021. Appellant thus urges us to find that the declaratory judgment order is void because it was not entered until August 29, 2022. *See Newsom v. Ballinger Indept. Sch. Dist.*, 213 S.W.3d 375, 379 (Tex. App.—Austin 2006, no pet.) ("[J]udicial action taken after a trial court's plenary power has expired is void.").

**B. Appellees' position**

Appellees respond that the Order was interlocutory in nature, and the trial court retained jurisdiction over the estate by indicating that the estate would remain on the docket until proof of tax payment was provided to the court. Appellees' theory relies on the trial court's statement in the Order that "upon payment of taxes, if any are due, this estate shall be dropped from the docket." Appellees urge this Court to find that because Appellant failed to respond to the tax inquiry, the Order is interlocutory, and the trial court retained jurisdiction to modify the Order.

Appellees primarily rely on *In re Wilson*, an unreported original proceeding in which the 14th Court of Appeals was asked to determine whether a county court acted beyond its plenary

power when it modified a 2005 probate order in 2011. *In re Wilson*, No. 14-12-00092-CV, 2012 WL 8017141 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (per curiam) (mem. op., not designated for publication). The underlying case in that original proceeding concerned the administration of the estate of an individual who was missing and presumed deceased. *Id.* at *1. The county court entered an order in 2005 ordering that the will be admitted to probate in January 2010. The order further stated: "This Court shall retain jurisdiction over this case to resolve any issues that might arise . . . [and] shall retain jurisdiction until the Court enters a final order that discharges [the receiver, guardian ad litem, and attorney ad litem] and closes this case." *Id. at *1* Appellees contend the present case is similar to *In re Wilson* because here, the Order required an additional step—a showing of proof of no taxes owed or proof of tax payment—before the final settlement of the estate.

### C. Analysis

Jurisdiction is a question of law subject to de novo review. *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We agree that muniment of title is an avenue to efficiently probate a will without requiring estate administration and that an order admitting a will to probate as a muniment of title inherently disposes of the estate matters and thus results in a final judgment. *See In re Estate of Kurtz*, 54 S.W.3d 353, 355 (Tex. App.—Waco 2001, no pet.) (discussing purpose of muniment of title); *see also In re Jacky*, 506 S.W.3d 550, 555–56 (Tex. App.—Houston [1st Dist.] 2016) (explaining that order to admit will as a muniment of title is a final and appealable judgment). And, as in this case, a court's continuing jurisdiction for the purpose of finally disposing of an estate does not change the court's 30-day plenary power over final judgments. *See Smalley*, 436 S.W.3d at 806 n.9.

8

However, the fact that Appellees filed a declaratory judgment action contesting the validity of the Will on the basis of ambiguity and a bill of review attacking the Order more than 30 days after the Order does not defeat the trial court's jurisdiction. "[T]he Estates Code provides at least two mechanisms for challenging a probate court's order: a bill of review and a will contest." *Chabot v. Estate of Sullivan*, 583 S.W.3d 757, 761 (Tex. App.—Austin 2019, pet. denied). These avenues for interested parties to challenge a probate order apply to an order admitting a will to probate as muniment of title. *See*, *e.g.*, *Id.* at 761-62; *In re Jacky*, 506 S.W.3d at 555–56 (discussing Estates Code Sections 55.251(b) and 256.204 as avenues for challenging a probate court order); *In re Estate of Davidson*, 153 S.W.3d 301, 303–04 (Tex. App.—Beaumont 2004, pet. denied) (discussing post-probate jurisdiction conferred by Sections 31 and 93 of the Texas Probate Code, the predecessor statutes to Sections 55.251 and 256.204 of the Estates Code). And both mechanisms provide interested parties a two-year jurisdictional window for an action following the will's admission to probate. TEX. ESTATES CODE § 55.251(a) and (b) ("An interested person may, by a bill of review filed in the court in which the probate proceedings were held, have an order or judgment rendered by the court revised and corrected on a showing of error in the order or judgment" and a bill of review "may not be filed more than two years after the date of the order."); *Id.* at § 256.204(a) ("After a will is admitted to probate, an interested person may commence a suit to contest the validity thereof not later than the second anniversary of the date the will was admitted to probate . . . ."); *Estate of Sullivan*, 583 S.W.3d at 761-62 (discussing the two-year statute of limitations on will contests under the Estates Code).

Here, because Appellees' action challenging the Will's validity on ambiguity grounds was filed within the two-year period permitted by the Estates Code, we find that the trial court had jurisdiction. We overrule Appellant's first issue.

9

## AMBIGUITY

In Appellant's second issue, he challenges 11 findings on legal and factual sufficiency grounds and asserts that the trial court's conclusions of law are erroneous and unsupported. In Appellant's view, the errors in the Will do not amount to "substantive mistakes" as the trial court found in its declaratory judgment order. He urges us to hold that the errors are misnomers that do not rise to the level of ambiguity. We agree with Appellant and conclude that the issue of ambiguity is controlling in this case.

The trial court's finding 14 is: "The Purported Will contained several, substantive mistakes, which render the Purported Will ambiguous and deficient to transfer or convey real property as a muniment of title."

Will construction and whether a will is ambiguous are questions of law subject to de novo review on appeal. *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (per curiam). In construing a will, courts look to the entire instrument, harmonize the provisions, and give effect to the testator's intent. *Id.* (citing *Stephens v. Beard*, 485 S.W.3d 914, 916 (Tex. 2016)); *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016). "A will is ambiguous when it is subject to more than one reasonable interpretation, or its meaning is simply uncertain." *Knopf*, 545 S.W.3d at 545. Intent is ascertained from the language used within the four corners of the will. *Estate of Burns*, 619 S.W.3d 747, 752 (Tex. App.—San Antonio 2020, pet. denied); *Henderson v. Parker*, 728 S.W.2d 768, 770 (Tex. 1987). "The intent must be drawn from the will, not the will from the intent." *Huffman v. Huffman*, 339 S.W.2d 885, 888 (Tex. 1960); *Hysaw*, 483 S.W.3d at 7. "Extrinsic evidence is not admissible to construe an unambiguous will." *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 637 (Tex. 2000).

10

When answering a question of will construction, this Court is mindful of the presumption against intestacy and recognizes that "[t]he mere making of a will is evidence that the testator had no intent to die intestate . . . as to the whole or any part of [her] property." *Shriner's*, 610 S.W.2d at 151.

The Decedent and Husband executed a joint will, which by its express terms, were contractual and reciprocal in nature. Articles IV and V of the Will contain provisions specific to Husband, and Articles VI and VII contain provisions specific to the Decedent. Although each spouse has individual sections within the joint document, the disposition of the property with regard to their children is the same. In Article IV, Husband bequeaths all property to the Decedent if she survives him, with the exception of the Juarez Property as follows:

> The only property that shall be awarded to someone other than my wife is a piece of real property that shall be bequeathed to my son, **JUAN JESUS LEDESMA, SR.** which is located at 3604 Juarez whose legal description is N1/3-a & S1/3-3 BLK 928 WD. This property shall be distributed to my son, **JUAN JESUS LEDESMA, SR.** whether my wife survives me or not.

And the record reflects that Decedent survived Husband.

The Decedent's portion of the Will, in so far as Husband does not survive her, provides for the distribution of the estate in the following manner pursuant to Article VII, which states:

> In the event my beloved husband, **FRANCISCO RENE LEDESMA** does not survive me, or dies simultaneously with me in a common accident, then I give devise and bequeath to my beloved children, **ANA MARIA HERNANDEZ, RENE LEDESMA, JUAN JESUS LEDESMA, CELIA ESCAMILLA, MARIA GUADALUPE SOTO AND MARIA ISABEL VASQUEZ**, if they survive me, absolutely and forever, all of my property which I own and/or have the right to dispose of at my death of whatever kind, whether separate or community, or whatever character and description, real, personal, and/or mixed and wherever situated.
>
> The only property that shall be awarded to someone other than my wife is a piece of real property that shall be bequeathed to my son,

11

> **JUAN JESUS LEDESMA, SR.** which is located at 3604 Juarez whose legal description is N1/3-a & S1/3-3 BLK 928 WD. This property shall be distributed to my son, **JUAN JESUS LEDESMA, SR.** whether my wife survives me or not.

Appellees assert that the repetition of the same clause devising the Juarez Property to Appellant creates an ambiguity in the Will because the clause in Decedent's portion is an exact copy of the clause in Husband's portion, thus incorrectly using the word "wife." This inconsistency, Appellees contend, casts doubt on whether sections that should have been used solely for Husband's portion of the joint will were erroneously cut and pasted into the Decedent's portion.

Appellees argued at trial and in their appellate brief that the Will contained errors in pagination, used pronouns and prepositions inconsistently, and seemingly included "cut and pasted" portions with errors in paragraph placement.[7] Appellees assert that the pagination errors indicate the Will was a draft and not a final version. The Will contains nine pages, which are labeled in sequential order in the footer of the document. While the pages are correctly and sequentially numbered, each page also includes the text: " . . . and the first page of this my Last Will and Testament, signed on this the 18th day of March, 2011."

---

[7] Appellees' brief further relies on the conflicting testimony of the witnesses about the circumstances surrounding the execution of the Will and testimony about the Decedent's ability to read or understand the English language. However, Appellees' pleadings sought declaratory judgment on the sole ground that the Will was ambiguous and the trial court ruled solely on ambiguity based on the relief sought in the declaratory judgment. The attestation of the Will and the Decedent's ability to read the English language have no bearing on the question of whether the language in the Will is ambiguous, and we limit our analysis to the four corners of the Will. *See Henderson*, 728 S.W.2d at 770.

Even if we were to construe the issue as an execution or attestation validity question, which Appellees did not plead at the trial court or brief in this Court, the trial court's findings do not support invalidation of the Will on either ground. Finding 12 states: "Decedent did not sign the Purported Will in front of her granddaughter, Elizabeth Vasquez." But the Estates Code requires that a will be attested by two or more credible witnesses "who subscribe their names to the will in their own handwriting *in the testator's presence*." TEX. ESTATES CODE ANN. § 251.051(3) (emphasis added). Whether Decedent signed the Will in the presence of the witness is legally insignificant, and Appellees did not file a cross-appeal contesting any of the trial court's findings. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex. 1986) (finding that unchallenged findings are binding on an appellate court unless the reporter's record establishes the opposite as a matter of law or the finding is unsupported by the evidence).

We have reviewed the Will in its entirety, and although it contains the complained-of errors, we cannot agree with the trial court that the errors create ambiguity requiring the Will to be set aside. Here, the errors do not make the intent of the testator uncertain or subject to more than one reasonable interpretation. *See, e.g., Knopf*, 545 S.W.3d at 545. Instead, we conclude that the repetition of the same clause using the word "wife" in both sections of the Will and the repetition of the same language in the footer amount to no more than scrivener's or clerical errors. *See Odom v. Coleman*, 615 S.W.3d 613, 628 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (discussing a scrivener's error when reviewing a trial court's decision to modify and reform a will). A scrivener's error "is one resulting from a minor mistake or inadvertence, esp[ecially] in writing or copying something on the record, and not from judicial reasoning or determination." *Id.* (quoting BLACK'S LAW DICTIONARY 563 (7th ed. 1999)). These minor mistakes do not render the Will ambiguous, as Decedent's intent is readily discerned from the instrument as a whole. *Knopf*, 545 S.W.3d at 545.

Because the language of the Will clearly conveys Decedent's intent, the trial court could not look outside the Will to find an alternate meaning. *In re Estate of Craigen*, 305 S.W.3d 825, 827 (Tex. App.—Beaumont 2010) (orig. proceeding); *see also Lehman v. Corpus Christi Nat'l Bank*, 668 S.W.2d 687, 688 (Tex. 1984) (instructing courts that extrinsic evidence cannot be used to support an interpretation of an unambiguous will). Based on the language within the four corners of the Will, it is clear the Decedent intended to give equally to her surviving named children all of the property she owned or had the right to dispose of or both, with the exception of the piece of real property located at 3604 Juarez, whose legal description is N1/3-1 & S1/3-3 BLK 928 WD, which is bequeathed to her son, Juan Jesus Ledesma, Sr. Accordingly, we sustain Appellant's second issue.

## CONCLUSION

We reverse the judgment of the trial court granting Appellees declaratory relief and allowing the estate to pass by intestacy. We reinstate the order admitting the Will to probate as a muniment of title.


LISA J. SOTO, Justice

October 6, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.