### PYLMAN v. FIRST NAT. BANK OF BEAUMONT.

No. 4773.

Court of Civil Appeals of Texas. Beaumont.
March 6, 1952.

Rehearing Denied April 2, 1952.

Geo. W. Brown, Jr., Beaumont, Howard P. Castle, Beaumont, of counsel, for appellants.

Marcus & Weller, Beaumont, Geo. A. Weller, Beaumont, of counsel, for appellees.

PER CURIAM.

The First National Bank of Beaumont and Martin Koelemay, Jr., have duly qualified as independent coexecutors of the will of Mrs. Clara K. Carter, deceased, in the County Court of Jefferson County. As such independent coexecutors they brought suit in the district court of Jefferson County to determine judicially what persons are entitled to take under the will of Clara K. Carter, in order that they might safely make distribution of the property in the estate of Mrs. Carter, deceased. The district court appointed George W. Brown,

Jr., attorney ad litem to represent Harry Glenn Pylman, the unknown heirs of Harry Glenn Pylman, the unknown heirs of John H. Pylman, the unknown heirs of Sebe R. Carter, and the unknown heirs of Clara K. Carter.

Item 4 of Mrs. Carter's will, which has been duly admitted to probate, provided as follows:

"All of the remainder of my property, of whatsoever kind or character, whether real, personal or mixed, and wherever so situated, I will, devise and bequeath as follows:

"One-half (½) to the brothers and sisters of my deceased husband, Sebe R. Carter, and to their descendants, it being my intention to set aside one-half (½) of my estate to the use and benefit of my husband's brothers and sisters and their children, and that same be distributed as it would under the Texas statute of descent and distribution. The other one-half (½) of my estate I give to my brothers and sisters and to their descendants, it being my intention to leave one-half of my estate to my brothers and sisters and to their descendants the same as if it were distributed under the Texas statute of descent and distribution."

There is little, if any, controversy as to the facts in this case. Only a question of law is presented by this appeal. Sebe R. Carter, the husband of Clara K. Carter, predeceased her and at the date of Mrs. Carter's death the father and mother of Sebe R. Carter were both dead. Sebe R. Carter had one brother and three sisters, but the only one in whom the litigants here are interested is Lampje Pylman, a sister, who died prior to Mrs. Carter's death. Lampje Pylman was married but once. She had three children, Richard Pylman, John Pylman and Harry Pylman. John Pylman died in Cody, Wyoming, in 1913, and he was survived by an adopted son, Harry Glenn Pylman, who was duly and legally adopted under the laws of the State of Missouri in 1903. Although his present whereabouts is unknown, Harry Glenn Pylman survived Clara K. Carter. Clara K. Carter, at the time of making

her last will, knew that John H. Pylman had adopted a son at some earlier date, although she did not know his name or whereabouts or whether he was living. Mrs. Carter died in Jefferson County, Texas, November 29, 1948. Her will was admitted to probate December 20, 1948.

The district court entered judgment, holding that Harry Glenn Pylman was not entitled to a share of the estate of Clara K. Carter under the terms of her will, construed in the light of the Texas statute of descent and distribution and the Texas Adoption Act. The Texas adoption statute of 1931 was the adoption statute in effect at the time of Mrs. Carter's death. In its conclusion of law No. 5, the district court held that Section 9 of that statute, Art. 46a, Vernon's Annotated Civil Statutes of Texas, insofar as it attempted to provide for inheritance by an adopted child from collateral descendants of his adopted parents, was unconstitutional and void.

The attorneys appointed by the court as attorneys ad litem for Harry Glenn Pylman et al. have perfected their appeal to this court from the judgment of the district court.

They bring forward four points, the gist of which is that under the 1931 Texas Adoption Act Harry Glenn Pylman was entitled to share in the estate of Mrs. Carter to the same extent as if he had been lawfully born to his adopted father, John Pylman, who was the son of Lampje Pylman, the sister of Mrs. Carter's husband.

There is no controversy between the parties that the status of Harry Glenn Pylman in this suit is determined by the provisions of the 1931 Texas adoption statute, which was in effect at the time of Mrs. Carter's death. Fulcher v. Carter, Tex.Civ.App., 212 S.W.2d 503; Eck v. Eck, Tex.Civ.App., 145 S.W.2d 231, error dismissed, correct judgment. Prior to the passage of the 1931 adoption statute, the question was settled in Texas that an adopted person could inherit only from his adopted parents and not through them from collateral kindred. Harle v. Harle, 109 Tex. 214, 204 S.W. 317, 15 A.L.R. 1261; Fletcher v. Persall, Tex.Civ.App., 75 S.W.2d 170.

In 1931 the Texas legislature passed a new adoption statute which provided for adoption of a minor child by a judicial proceeding, the details of which proceeding are set forth in 11 sections of the statute, Sections 1 to 10a. Section 9 thereof provided as follows:

"Sec. 9. When a child is adopted in accordance with the provisions of this Article, all legal relationship and all rights and duties between such child and its natural parents shall cease and determine, provided however, that nothing herein shall prevent such adopted child from inheriting from its natural parent; all adopted children shall inherit from the adopted as well as its natural parents. Said child shall thereafter be deemed and held to be, for every purpose, the child of its parent or parents by adoption as fully as though born of them in lawful wedlock. Said child shall be entitled to proper education, support, maintenance, nurture and care from said parent or parents by adoption, and shall inherit from said parent or parents by adoption, and as the child of said parent or parents by adoption, as fully as though born to them in lawful wedlock; subject, however, to the provisions of this Act. Said parent or parents by adoption shall be entitled to the services, wages, control, custody and company of said adopted child, and shall, as such adopting parent or parents, inherit from and as the parent or parents of said adopted child as fully as though the child had been born to them in lawful wedlock; provided, however, that upon the death of such adopted child, while unmarried and without issue of its body, all of its property, of whatsoever kind and nature, shall pass and descend to the adopting parent or parents, if living, but if such adopting parent or parents be not living, then all such property shall pass and descend to the next of kin of said adopting parent or parents according to the then law of descent and distribution, and not to the next of kin of such adopted child; and provided that, upon the death of such adopted child leaving surviving a husband or wife and child or children, or leaving surviving a husband or wife and no child or children, or leaving surviving a child or children and no husband or wife, then and in such event all property of whatsoever kind and nature of said adopted child shall pass and descend to said husband or wife and child or children or either of them as the case might be, according to the then law of descent and distribution; provided, further, that upon the death of a child of an adopted child without leaving a surviving father or mother, or husband or wife, or child or children, or a brother or brothers, or sister or sisters, all property of whatsoever kind of such deceased child of an adopted child shall pass and descend to the adopting parent or parents of such adopted child, if living, but if not living, then to the next of kin of such adopting parent or parents, according to the then law of the descent and distribution, and not to the next of kin of such adopted child; provided, further, that if such adopting parent or parents shall have other children, both natural children and adopted children, then, in such event, the children by birth and adoption shall respectively inherit from and through each other as if all such children had been born in lawful wedlock of the same parents; provided, further, that nothing in this Act shall be construed so as to prevent or debar an adopted child from disposing of its property by Will according to the laws of this State; and finally, provided, that the legal adoption of a child, according to the laws of another State of the United States, residing in the State of Texas, shall be, in all respects, valid and binding as if the adoption had occurred in the State of Texas, insofar as the effect of the adoption and the rights of inheritance may be concerned as provided in this Act."

At the outset of our discussion we note that the provisions of Section 9 of the Article, by its own language, apply only to "a child adopted in accordance with the

provisions of this Article". Harry Glenn Pylman was not adopted, so far as this record shows, in accordance with the provisions of the Texas 1931 adoption statute. All we know from the record is that he was adopted in the State of Missouri in 1903. Hoch v. Hoch, 140 Tex. 475, 168 S.W.2d 638. For this reason it is doubtful whether Harry Glenn Pylman is entitled to whatever benefits the 1931 adoption statute provides for adopted children.

 We believe, however, that under the 1931 adoption statute, even if he had been adopted in accordance therewith, Harry Glenn Pylman would not be entitled to share in the distribution of Mrs. Carter's estate for the following two reasons: (1) that portion of Section 9, Article 46a as amended in 1931, which attempted to authorize adopted children to inherit from the natural children of the adopted parent is void. It was held in Eck v. Eck, Tex.Civ. App., 145 S.W.2d 231, 235, that such a purpose of the statute was not contained in the caption and no notice was given of the purported change in the adoption statute as to the relation between the adopted child and the natural children of the adoptive parent and that portion of the act was therefore void; (2) the remaining portions of said Section 9 of Article 46a, the portions of the statute which were not held unconstitutional, did not enlarge the rights of the adopted child so as to give it the right to inherit through the adoptive parent and thus from the collateral kindred of such adoptive parent. Hoch v. Hoch, 140 Tex. 475, 168 S.W.2d 638, 641. We believe the Supreme Court in that case made the final interpretation of Section 9 of Article 46a of the 1931 adoption statute. In the opinion it is said, "It (the statute) intends, as to the children adopted under it, and, as between the adopting parent and the adopted child, to create a relation in law and in fact the same as exists under our laws between natural parent and natural child. * * * we desire to call attention to the fact that we have placed emphasis on the phrase we have used in this opinion, *as between the adopting parent and the adopted child.* To our minds, the statute purports to go no further, except in one

particular." (This exception was in regard to that section providing that children by birth and adoption should inherit from and through each other. That is the portion of the statute which has been held unconstitutional and void.) We believe that under these holdings an adopted child under the 1931 statute could not take from collateral kindred. We are confirmed in this view by the fact that the legislature in 1951 further amended Section 9 of the adoption statute by making further provision for the inheritance by an adopted child and its descendants and allowing them to inherit from and through their parents and kindred the same as if such child were the natural legitimate child of such parent or parents by adoption. This action by the legislature was taken after the opinion by the Supreme Court in the case of Hoch v. Hoch, supra, which expressly approved the holding in the case of Eck v. Eck, supra. It is apparent, therefore, that the legislature was achieving a result by the 1951 statute which it had attempted to do by the 1931 statute, but which the Supreme Court of Texas had determined had not been accomplished.

The judgment of the trial court is therefore affirmed.