NUMBER 13-05-320-CV


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







LUCIE CARR ARMSTRONG, JR., ET AL., Appellants,


v.



SARITA STOREY ARMSTRONG HIXON, ET AL., Appellees.





On appeal from the 105th District Court


of Kenedy County, Texas.






O P I N I O N



Before Justices Hinojosa, Yañez, and Castillo


Opinion by Justice Castillo



 Appellants Lucie Carr Armstrong, Jr., and her adult-adopted daughter, Katherine
Poulis (collectively "Lucie"), raise seven issues challenging the trial court's judgment
granting summary judgment in favor of appellees (collectively "Hixon"), (1) and denying
summary judgment in favor of Lucie. We affirm.

I. Background


 Basic facts of this case are not in dispute. Tom Armstrong was married to
Henrietta R. K. Armstrong, who predeceased him. He had no children. Tom died on
March 3, 1986, leaving a written will dated April 30, 1964, as well as a first codicil
dated March 22, 1977, and a second codicil dated March 31, 1997 (the "Will"). The
1964 will provides that the remainder of the estate shall be held in trust for the
surviving children of Tom's brother, Charles Armstrong ("Charles"), or that child's
descendants. The first codicil states it was drafted because, at that time, Tom feared
the original copy of the 1964 will could not be located. The codicil expressly states
the 1964 will is not revoked; all terms of the will are reaffirmed, and a copy is
attached. (2) The second codicil (3) includes the following statement: "It is my hope that
the Armstrong Ranch will be held together and operated as a unit as long as
reasonably possible." 

 Tom's residuary estate (the "Residuary Trust") passed to his brother Charles's
then-living children, John, Tobin, and Lucie. Tobin was appointed under the Will as
the sole trustee of the Residuary Trust, which would terminate upon the death of the
last survivor of Charles's children. If one of the children died prior to termination of
the trust, that child's share of the income would pass to that child's descendants. 
John is now deceased, survived by his children and grandchildren. Tobin is still living
and has both children and grandchildren. Lucie is still living, but has never married or
had a natural child. Recently, Lucie adopted an adult woman, Katherine Poulis. 

 Subsequent to the adoption, some of the descendants ("Hixon") brought suit on
January 2, 2004, to declare that the adopted adult, Katherine Poulis, was not entitled
to take as a descendant under the Will. Tobin, Trustee of the Residuary Trust,
similarly sought a court interpretation of the term "descendant," and of whether Lucie
could take as a beneficiary under the Residuary Trust. In a counterclaim, Lucie
requested a declaration that the term descendant did include Katherine Poulis, the
adult-adoptee. 

 The parties filed competing motions for summary judgment. On April 11, 2005,
the trial court entered two orders. The first order grants summary judgment in favor
of Hixon and denies Lucie's motion. (4) The court declares that "Katherine Poulis, and
any other person adopted as an adult . . . is not and cannot be a remainder or
contingent beneficiary of the Trust." A second order issued that same date finds "that
the Will of Tom Armstrong is unambiguous," sustains Lucie's objections to Hixon's
exhibits 4, 13, and 14, and overrules Lucie's objections as to Hixon's exhibits 5-12,
15, and 16. This appeal ensued. 


II. Issues Presented

 Lucie brings seven issues for review. Issues one and two challenge the trial
court's granting of Hixon's motion for summary judgment, denial of Lucie's motion,
and its declaration that Lucie, as an adopted adult, is not a remainder or contingent
beneficiary under the Trust. In issue three, Lucie challenges the trial court's decisions
regarding attorney fees. In issues four through seven, Lucie challenges the court's
failure to sustain Lucie's objections to all extrinsic evidence. We consider the issues
in the order presented. 

III. Will Construction in the Context of the Declaratory Judgments Act

A. Standards of Review

 Suits for declaratory judgment are intended to determine the rights of parties
when a controversy has arisen, before any wrong actually has been committed. 
Montemayor v. City of San Antonio Fire Dep't, 985 S.W.2d 549, 551 (Tex. App.-San
Antonio 1998, pet. denied). A declaratory judgment is appropriate if a justiciable
controversy exists as to the rights and status of the parties, and the declaration sought
will resolve the controversy. Tex. Dep't of Pub. Safety v. Moore, 985 S.W.2d 149,
153 (Tex. App.-Austin 1998, no pet.); see also Tex. Civ. Prac. & Rem. Code Ann. §
37.003(c) (Vernon 1997).

 We review declaratory judgments under the same standards as other judgments
and decrees. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997); Guthery v.
Taylor, 112 S.W.3d 715, 720 (Tex. App.--Houston [14th Dist.] 2003, no pet.);
Roberts v. Squyres, 4 S.W.3d 485, 488 (Tex. App.-Beaumont 1999, pet. denied). 
We look to the procedure used to resolve the issue at trial to determine the standard
of review on appeal. Guthery, 112 S.W.3d at 720; Roberts, 4 S.W.3d at 488. Here,
the trial court determined the declaratory judgment issue through summary judgment
proceedings. The function of summary judgment is to eliminate patently unmeritorious claims
and defenses, not to deprive litigants of the right to a jury by trial. Tex. Dep't of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) (citing Casso v. Brand, 776
S.W.2d 551, 556 (Tex. 1989)); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex.
App.-Corpus Christi 2003, no pet.). We review de novo a trial court's grant or denial
of a traditional motion for summary judgment. Creditwatch, Inc. v. Jackson, 157
S.W.3d 814, 816 n.7 (Tex. 2005) (citing Schneider Nat'l Carriers, Inc. v. Bates, 147
S.W.3d 264, 290 n.137 (Tex. 2004)); Alaniz, 105 S.W.2d at 345. The movant bears
the burden of showing that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Alaniz, 105 S.W.2d
at 345; Mowbray v. Avery, 76 S.W.3d 663, 690 (Tex. App.--Corpus Christi 2002,
pet. denied). Where, as here, both parties move for summary judgment and the trial
court grants one motion and denies the other, we review both parties' motions for
summary judgment and determine whether the trial court erred in its decision. Dow
Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002); Parker v. Parker, 131 S.W.3d
524, 530 (Tex. App.--Fort Worth 2004, pet. denied). 

B. Will Construction

 Our primary concern in construing a will is to ascertain the true intent of the
testator as expressed in the instrument. San Antonio Area Found. v. Lang, 35 S.W.3d
636, 639 (Tex. 2000); Shriner's Hosp. For Crippled Children of Tex. v. Stahl, 610
S.W.2d 147, 151 (Tex. 1980). If a will itself is unambiguous, we do not go beyond
its specific terms in search of the testator's intent. Lang, 35 S.W.3d at 639; Frost
Nat'l Bank v. Newton, 554 S.W.2d 149, 154 (Tex. 1977). We construe a will as a
whole, giving effect to all its parts. Gee v. Read, 606 S.W.2d 677, 680 (Tex. 1980);
see Sharp v. Broadway Nat'l Bank, 761 S.W.2d 141, 143-45 (Tex. App.--San Antonio
1998), aff'd, 784 S.W.2d 669 (Tex. 1990) (per curiam). Absent ambiguity, the
construction of a will is a matter of law. Penland v. Agnich, 940 S.W.2d 324, 326
(Tex. App.-Dallas 1997, no writ). 

C. Adoption and Inheritance

 The original adoption act of 1850 created the relation of ancestor and heir, or
parent and child, as between the adopter and the adopted. Fletcher v. Persall, 75
S.W.2d 170, 170 (Tex. Civ. App.-Austin 1934, writ ref'd). The adopted had no right
of inheritance except from the estate of the party adopting him or her. Id. In 1931,
the legislature amended the adoption statute as to minors, providing that "all adopted
children shall inherit from the adopted as well as its natural parents;" further, "said
child shall thereafter be deemed and held to be, for every purpose, the child of its
parent or parents by adoption as fully as though born of them in lawful wedlock." Act
of May 21,1931, 42nd Leg., R.S., ch. 177, 1931 Tex. Gen Law 300, 302. Despite
the language "for every purpose," the 1931 adoption statute did not enlarge the rights
of the adopted child so as to give it the right to inherit "through" the adoptive parent,
and thus from collateral kindred of the adoptive parent. See Hoch v. Hoch, 168
S.W.2d 638, 641 (Tex. 1943); Pylman v. First Nat'l Bank of Beaumont, 247 S.W.2d
580, 583 (Tex. Civ. App.-Beaumont 1952, writ ref'd n.r.e.). 

 In 1947, the Legislature passed an act to permit the adoption of adults. Act of
June 2, 1947, 50th Leg., R.S., ch. 428, 1947 Tex. Gen. Laws 1009. Section 5 of
this act provides that all adopted persons shall inherit "from" the adoptive parents as
well as the natural parents as if a natural-born child. Id. § 5 at 1010. Other language
parallels that used for the adoption of minor children. Id. 

 In 1951, the adoption statute relating to minors was modified to expressly
provide that minors were entitled to inherit both "from and through" the adoptive
parents. Act of May 7, 1951, 52nd Leg., R.S., ch. 249, § 9, 1951 Tex. Gen. Laws
388, 390. The inheritance rights of adopted adults continued to be governed by the
1947 Act until it was repealed and the adoption statutes were transferred into the
family code in 1973. Acts of 1973, 63rd Leg., R.S., ch. 543, § 16.09, 1973 Tex.
Gen. Laws 1411, 1431 (dealing with adoption of minors and providing for inheritance
"from and through" the adoptive parents); §16.55, 1973 Tex. Gen. Laws at 1432
(providing the adopted adult is the "son or daughter of the adoptive parents, and of the
natural parents, for inheritance purposes"). Not until 1995 did the Legislature modify
the adult adoption statute to specifically provide that an adopted adult might inherit
"from and through" the adopted adult's adoptive parents. See Act of April 6, 1995,
74th Leg., R.S., ch. 20, § 1, sec. 162.507(b), 1995 Tex. Gen. Laws 113, 238
(current version at Tex. Fam. Code Ann. § 162.507 (Vernon Supp. 2005).

D. Application of the Law to Tom's Will

 We first note that the trial court determined Tom's Will to be unambiguous. 
This finding is not contested on appeal. Rather, Lucie challenges the trial court's
conclusion that the Will unambiguously excludes an adopted adult as a beneficiary, and
therefore excludes Katherine Poulis.

 It is uncontested that the Residuary Trust is not part of the estate of the
adoptive parent, Lucie Carr Armstrong, but rather is of the estate of a "collateral"
relative. It is also uncontested that the Will is to be construed pursuant to the law in
effect at the time of its execution. We apply the law as it existed at the time the Will
was executed. Cutrer v. Cutrer, 345 S.W.2d 513, 516 (Tex. 1961); Penland, 940
S.W.2d 326; Hagaman v. Morgan, 886 S.W.2d 398, 400 (Tex. App.-Dallas 1994,
no writ). 

 Tom's will was written in 1964. The first codicil did nothing to alter that date;
the will was never revoked. The codicils, both written in 1977, contained sufficient
reference to the 1964 will. They operated as a republication of the Will insofar as it
was not altered or revoked by the codicil. Hinson v. Hinson, 280 S.W.2d 731, 735
(Tex. 1955). All can be considered as one instrument speaking from the date of the
codicil, see id., but this does not obviate the fact that the Will was executed in 1964. 
We apply the law as it existed in 1964. (5) 

 Lucie relies upon language in Lehman v. Corpus Christi Nat'l Bank, 668 S.W.2d
687, 688-89 (Tex. 1984), to urge that the Supreme Court had already rejected any
contention that an adopted adult could not inherit from collateral relatives prior to
1995. Lehman emphasizes that the statutory language adopted in 1947 provided that
"an adopted adult was 'for every purpose, the child of his parent or parents by
adoption as fully as though born of them in lawful wedlock.'" Id. at 688 (citing Act
of June 19, 1947, ch. 428, § 5, 1947 Tex. Gen. Laws 1009). Lehman states that
then-current law (1984) was no different. Id. at 689. 

 Lehman involved an adopted adult. Id. However, we do not agree with Lucie's
application of the case to the circumstances before us. Lehman found there was no
need to look to outside law because the will itself clearly and expressly provided that
descendants would "always include those who are adopted." Id. The court based its
conclusion on that expressed intent. Id. at 689. The Lehman court also refused to
announce a "presumption" that would mandate inheritance by the laws of descent and
distribution where an individual had drafted a will to expressly provide otherwise. Id.
at 688. 

 Importantly, a review of legislative history does not support Lucie's contention
that adult adoptees have been entitled to inherit from collateral relatives since 1947,
and at least since 1973. When construing a statute, our objective is to ascertain and
give effect to the Legislature's intent. Tex. Gov't Code Ann. §§ 311.021, 311.023,
312.005 (Vernon 2005); McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003);
Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex. 2000). In discerning that intent, we
look to the plain and common meaning of the statute's words, McIntyre, 109 S.W.3d
at 745, and read the statute as a whole, not just in isolated portions. See City of San
Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). Where statutory language
is unambiguous, we interpret it according to its terms, giving meaning to the language
consistent with other provisions in the statute. McIntyre, 109 S.W.3d at 745. We
also consider the objective the law seeks to obtain and the consequences of a
particular construction. Tex. Gov't Code Ann. § 311.023(1), (5) (Vernon 1998); see
also McIntyre, 109 S.W.3d at 745. Finally, we presume the Legislature would not do
a useless act in adopting a statute. Webb County Appraisal Dist. v. New Laredo Hotel,
Inc., 792 S.W.2d 952, 954 (Tex. 1990). 

 The legislative history clearly reflects that the language "for every purpose" does
not carry with it the right to inherit "from and through." Specifically, although the
1931 act includes the language "for every purpose," the passage of a later act was
required to expand the law to provide that a minor child might inherit "from and
through" its adoptive parents. (6) No such change was effected in the adult adoption
statutes when they were codified in 1973 and, indeed, another later enactment was
required to provide that an adopted adult might inherit not only "from" but also
"through" its adoptive parents. (7) 

 Nothing in Lehman operates to overturn intervening case law recognizing this
historical progression of statutory adoption law and the distinction between "for every
purpose" and "from and through." See, e.g., Pylman, 247 S.W.2d at 583 (concluding
that the 1931 act, despite inclusion of the language "for every purpose," "did not
enlarge the rights of the adopted child so as to give it the right to inherit through the
adoptive parent and thus from the collateral kindred."); Foster v. Foster, 641 S.W.2d
693, 695 (Tex. App.-Fort Worth 1982, no writ) (stating that "even now it is not the
law of this State that one who was an adult when adopted has entitlement under the
laws of descent and distribution to recover as a child from anyone other than his
adoptive parents."). (8) 

 Lucie similarly relies upon Hagaman, 886 S.W.2d at 401, which deals with
interpretation of a will and inheritance as applied to an adopted adult. In Hagaman,
the court was called upon to interpret language in the grandmother's will, executed in
1972, to determine whether an adopted adult (step-daughter) was the"bodily issue"
of a deceased child. Id. at 399-400. Importantly, a separate provision of the
grandmother's will, never triggered because none of her children predeceased her,
provided specifically that the step-daughter and her issue would inherit under the will
should her step-father not then be living. Id. The Dallas court relied upon the
language "for every purpose" to conclude that an adopted adult was the son or
daughter of the adoptive parents for all purposes unless language in the will expressed
otherwise. Id. at 401. In Hagaman, such an interpretation was consistent with the
testator's expressed intent in other portions of her will. See id. However, Hagaman
does not purport to conclude that "for every purpose" in itself constitutes an
entitlement for an adopted adult to also inherit "through" adoptive parents. We further
note that the holding in Hagaman is specifically limited to the circumstances of that
case:

We are not deciding whether an adopted adult has a right to intestate
inheritance from the relative of any adoptive parent. Our opinion is
strictly limited to the use of the terms "issue" and "bodily issue" in a will
executed after 1947 which does not define those terms or specifically
exclude adopted adults.


Hagaman, 886 S.W.2d at 402 n.8. Neither term is at issue here. 

 We conclude that the law, as it existed in 1964, provided that an individual
adopted as an adult was a child of the adopting parents for all purposes and could
inherit from them, but the law did not then suggest that the adopted adult could also
inherit "through" the adoptive parents. To find otherwise would be to ignore extensive
intervening legislative history delineating a distinction between "for every purpose" and
"from and through." Consequently, Katherine Poulis, an adopted adult, could not be
deemed a beneficiary under the Residuary Trust. We overrule Lucie's first and second
issues on appeal.

IV. Attorney Fees under the Declaratory Judgments Act

 The parties below sought costs and attorney fees in accordance with section
37.009 of the Texas Civil Practice & Remedies Code. Tex. Civ. Prac. & Rem. Code
Ann. § 37.009 (Vernon 1997). The trial court awarded fees to Hixon, and to the
guardians ad litem appointed to represent minor children and all unknown or unborn
adoptive beneficiaries under the trust. No fees were awarded to Lucie. 

 The Declaratory Judgments Act provides that in a proceeding brought under it,
"reasonable and necessary attorney's fees" may be awarded as are "equitable and
just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997); Allstate Ins. Co.
v. Hallman, 159 S.W.3d 640, 643 (Tex. 2005). The reasonable and necessary
requirements are questions of fact to be determined by the fact finder, but the
equitable and just requirements are questions of law for the trial court to decide. Ridge
Oil Co. v. Guinn Invs., Inc., 148 S.W.3d 143, 161 (Tex. 2004). "Unreasonable fees
cannot be awarded, even if the court believes them just, but the court may conclude
that it is not equitable or just to award even reasonable and necessary fees." Id. at
161-62 (citing Bouquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998)). A judge's
decision to award or not award attorney's fees is reviewed on appeal for an abuse of
discretion. Id. at 163. To find an abuse of discretion, the trial court must have acted
without reference to any guiding rules or principles, such that the act was arbitrary or
unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). Merely because a trial court may decide a matter within its discretion in a
different manner than an appellate court would in a similar circumstance does not
demonstrate that an abuse of discretion has occurred. Id. at 242. 

 Lucie complains only that if we alter the disposition of this case and find
summary judgment in her favor, then she should be awarded attorney fees and the
awards to the other parties should be reversed. We have concluded that Katherine
Poulis is not a beneficiary under the Will as a matter of law. Adequate evidence was
before the trial court to enable it to award reasonable and necessary fees in a just and
equitable manner, including evidence as to the attorneys' qualifications to give a legal
opinion on the issue, the time spent, hourly rate, and total amount. That evidence was
not challenged. We conclude that the trial court did not abuse its discretion in making
the awards as it did. We overrule issue three on appeal.

V. Extrinsic Evidence

 When there is no dispute about the meaning of words used in a will, extrinsic
evidence will not be received to show that the testator intended something outside of
the words used. Lang, 35 S.W.3d at 639. However, a court may "always receive and
consider evidence concerning the situation of the testator, the circumstances existing
when the will was executed, and other material facts that will enable the court to
place itself in the testator's position at the time." Id. (citing Stewart v. Selder, 473
S.W.2d 3, 7 (Tex. 1971). Evidence of that nature may be received to assist the court
in determining the sense in which the words were used by the testator, although the
intention of the testator must be found, in the last analysis, in the words of the will. 
Stewart, 473 S.W.2d at 7.

 The admission and exclusion of evidence is committed to the trial court's sound 
discretion. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). We
must uphold the trial court's evidentiary ruling if there is any legitimate basis for the
ruling. Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998)
(citing State Bar of Tex. v. Evans, 774 S.W.2d 656, 658 n.5 (Tex. 1989)). Moreover,
we will not reverse a trial court for an erroneous evidentiary ruling unless the error
probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1; Malone,
972 S.W.2d at 43; see also Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396
(Tex. 1989).

 Lucie complains that the trial court erroneously overruled her objections to
Hixon's exhibits 5, 6, 7, 8, 9, 10, 11, 12, 15 and 16. We have reviewed the exhibits,
keeping in mind that the trial court could not properly consider evidence that in any
manner addressed the intent of Tom as related to the disposition of his assets, other
than as expressed in the Will itself. Exhibit 5 deals with background and history of the
ranch; exhibits 6 and 8 deal with the adult adoption proceedings; exhibit 7 is a copy
of Lucie Armstrong's will. Exhibit 10 is an affidavit written by Tom in 1977,
addressing the circumstances surrounding the drafting of his first codicil. Exhibits 15
and 16 deal with attorney fees. All of these could properly be considered by the trial
court as they concerned "the situation of the testator, the circumstances existing
when the will was executed, and other material facts that will enable the court to
place itself in the testator's position at the time." Lang, 35 S.W.3d at 639. 

 Remaining exhibits 9 (attaching excerpts of a deposition), 11, and 12 are
affidavits addressing Tom's intent in drafting his codicils in 1977. Lucie objects that
they constitute impermissible hearsay, and violate the Dead Man's Statute. (9) However,
nothing in the exhibits addresses how Tom intended to dispose of his property; any
such effort would indeed have been impermissible. Because the evidence in issue was
addressed to the situation and circumstances existing at the time the Will was drafted,
we conclude the trial court did not err in overruling Lucie's objections to the evidence. 
Further, even if there was error, we conclude it did not result in the rendition of an
improper judgment. See Malone, 972 S.W.2d at 43. Nothing in the record reflects
that the evidence was determinative of the trial court's conclusion, and we have
reached our conclusion independent of the evidence, finding that Lucie's motion for
summary judgment fails as a matter of law. We overrule issues 4, 5, 6, and 7 on
appeal. 

VI. Conclusion

 Having overruled all issues on appeal, we affirm the judgment of the trial court
in all respects. 


 ERRLINDA CASTILLO

 Justice


Opinion delivered and filed 

this 26th day of October, 2006.

 
1. Appellees are Sarita Storey Armstrong Hixon, Tobin Armstrong, Jr., Katharine Armant
Armstrong, Anne L. Idsal, John Barclay Armstrong, James Legendre Armstrong, Catharine Coble
Armstrong, Stewart Larkin Armstrong, Jr., Mia Whittenburg Armstrong, John Nicholas Jitkoff, and
Tatiana Adrian Jitkoff. 
2. The first codicil names a new trustee under paragraph III of the Will, since one of those first-named had died. 
3. The second codicil appoints a different successor executor and trustee under paragraph V of
the Will. 
4. The order also awards attorney fees to various parties other than Lucie. 
5. We note that even application of the law as it existed in 1977, when the codicils were written,
would not alter the outcome of this opinion. 
6. Act of May 7, 1951, 52nd Leg., R.S., ch. 249, §9, 1951 Tex. Gen. Laws 388, 390. 
7. Act of April 6, 1995, 74th Leg., R.S., ch. 20, §1, sec. 162.507(b), 1995 Tex. Gen. Laws
113, 238. 
8. We note Lehman's reference to Vaughn v. Gunter, 458 S.W.2d 523 (Tex. Civ. App.-Dallas
1970), writ ref'd n.r.e., 461 S.W. 2d 599 (1970). Lehman v. Corpus Christi Nat'l Bank, 668 S.W.2d
687, 688 (Tex. 1984). Vaughn is cited with respect to the "stranger to the adoption" rule, which the
Lehman court noted had been rejected in Texas. Id. However, Vaughn involved the inheritance rights
of an adopted minor child, not an adopted adult as is the case in Lehman. Vaughn, 458 S.W.2d at 524. 
The rights of adopted minors had clearly been expanded to permit inheritance "by and through" adoptive
parents with the 1951 act. Id. at 526 (citing Act of May 7, 1951, 52nd Leg., R.S., ch. 249, § 9, 1951
Tex. Gen. Laws 388, 390). Subsequent to 1951, and specifically because of that act, instead of
presuming a minor child was not entitled to inherit from collateral relatives absent an expressed contrary
intent, the opposite view prevailed and an intent to include adopted minor children was shown, absent
expressed intent to exclude them. Id. at 527. 
9. The Dead Man's Statute provides generally that "in actions by or against executors,
administrators, or guardians, in which judgment may be rendered for or against them as such, neither
party shall be allowed to testify against the others as to any oral statement by the testator, intestate
or ward, unless that testimony to the oral statement is corroborated." Tex. R. Evid. 601(b); Escamilla
v. Estate of Escamilla, 921 S.W.2d 723, 726 (Tex. App.-Corpus Christi 1996, writ denied) (citing
Quitta v. Fossati, 808 S.W.2d 636, 641 (Tex. App.-Corpus Christi 1991, writ denied)).