NUMBER 13-06-086-CV



COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JOHN AND BETTY HOUGH, Appellants,


v.


BROWNSVILLE WINTER HAVEN

PROPERTY OWNERS ASSOCIATION, Appellee.

 


On appeal from the 357th District Court


of Cameron County, Texas.

 

 

MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza
 

 This appeal arises from a declaratory action filed by appellee, Brownsville Winter
Haven Property Owners Association (the "Association") to enforce certain subdivision
covenants and architectural rules. Appellants, John and Betty Hough, appeal the trial
court's order granting summary judgment in favor of the Association. By one issue, the
Houghs contend that the trial court erred in granting the Association's motion for summary
judgment. We reverse and render, in part, and remand, in part. We reverse the trial
court's order granting summary judgment in favor of the Association and render judgment
in favor of the Houghs. We reverse and remand the issue of attorney's fees to the trial
court.

I. Background

 This suit involves restrictive covenants and architectural rules in the deed to the
Houghs' property, Lot 2, Block 12, Winter Haven subdivision, located in Brownsville, Texas. 
The adjoining lot, Lot 1, is currently owned by Ronald and Amy Losey. The history of lots
1 and 2, prior to ownership by the Houghs, is set forth as follows. (1) 

 In 1984, the home in which the Houghs currently reside was constructed on lot 2. 
The Houghs claim the porch at issue was built on lot 2 in 1984. Lot 1 remained vacant. 
The Houghs also assert, and the Association does not argue otherwise, that lots 1 and 2
did not come under common ownership until January of 1989 when the Association
conveyed lot 1 to Leta Stuart, who owned lot 2 at the time. On the same day, Leta Stuart
conveyed both lots 1 and 2 to Edwin and Tillie Ringdahl. At the time of the conveyance
to the Ringdahls, the porch at issue, which extended to within five feet of the common
boundary line of lots 1 and 2, had already been added to the house on lot 2. Lot 1
remained vacant. In March of 1995, the Ringdahls sold both lots 1 and 2 to the Houghs. 
In October of 1999, the Association granted the Houghs a building permit to place windows
on the pre-existing porch which encroached into the side easement. 

 In February 2002, the Houghs entered into a contract to sell lot 1, which was still
vacant, to the Loseys. The Houghs meanwhile retained, and continued to reside in, their
home on lot 2. The Association sent letters to the Houghs beginning in April 2002 advising
them that they were in violation of rules and regulations requiring a five foot side easement
to be left clear on each side of their property line. The Houghs were advised that their
porch was in violation of the restrictive covenants and architectural rules. Subsequent
letters from the Association explained that when the Houghs owned both lots 1 and 2, the
porch was not in violation, even though it technically encroached onto the easement
because the two lots were joined as one large lot and owned by one owner. (In other
words, the lots were treated as "double lots" with the home being situated on a double lot,
thus the lot lines were in order). The Association claimed that upon selling lot 1 to the
Loseys, the Houghs split the lots into two, and this "severance" resulted in a violation of the
restrictive covenant because the porch encroached into the side easement. The
Association's architectural rules provide for side easements of a minimum of five feet from
the property line. The Houghs refused to relocate or tear down the porch as advised by
the Association. 

 On May 31, 2004, the Association sent the Houghs an invoice totaling $10,900 for
fines and penalties for the alleged easement violations. The Association then filed suit
against the Houghs for declaratory and injunctive relief. (2) Both parties filed competing
motions for summary judgment. (3) The trial court granted the Association's motion for
summary judgment and denied the Houghs' motion. (4) This appeal ensued.

II. Analysis

A. Standard of Review

 Declaratory judgments are reviewed under the same standards as all other
judgments. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997); In re Estate of
Schiwetz, 102 S.W.3d 355, 365 (Tex. App-Corpus Christi 2003, no pet.). We look to the
procedure used to resolve the issue at trial to determine the standard of review on appeal. 
Guthery v. Taylor, 112 S.W.3d 715, 720 (Tex. App.-Houston [14th Dist.] 2003, no pet.);
Roberts v. Squyers, 4 S.W.3d 485, 488 (Tex. App.-Beaumont 1999, pet. denied). In this
case, the trial court determined the declaratory judgment issue through summary judgment
proceedings.

 When both parties move for summary judgment and the trial court grants one
motion and denies the other, we review the summary judgment evidence presented by
both sides, determine all questions presented, and render the judgment the trial court
should have rendered. Tex. Workers' Compensation Comm'n v. Patient Advocates of Tex.,
136 S.W.3d 643, 648 (Tex. 2004) (citing FM Props. Operating Co. v. City of Austin, 22
S.W.3d 868, 872 (Tex. 2000)); Dow Chem. Co. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002);
Armstrong v. Hixon, 206 S.W.3d 175, 180 (Tex. App.-Corpus Christi 2006, pet. denied). 
We must affirm summary judgment if any of the summary judgment grounds are
meritorious. Tex. Workers' Compensation Comm'n, 136 S.W.3d at 648. 

 A traditional summary judgment may be granted if the motion and summary
judgment evidence show there is no genuine issue of material fact and the moving party
is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed material
fact issue precluding summary judgment, evidence favorable to the nonmovant will be
taken as true. Id. at 548-49. As movant, the defendant is entitled to summary judgment
if the evidence disproves, as a matter of law, at least one element of each of the plaintiff's
causes of action or conclusively establishes each element of an affirmative defense. 
Friendswood Dev. Co. v. McDade & Co., 926 S.W.2d 280, 282 (Tex. 1996). 

 A defendant is entitled to summary judgment on an affirmative defense if the
defendant conclusively proves all the elements of the affirmative defense. Cathey v.
Booth, 900 S.W.2d 339, 341 (Tex. 1995). To conclusively prove all of the elements of the
affirmative defense, the movant must present summary judgment evidence that establishes
each element of the affirmative defense as a matter of law. Ryland Group, Inc. v. Hood,
924 S.W.2d 120, 121 (Tex. 1996). If the defendant meets this burden, the plaintiff must
then produce evidence raising a genuine issue of material fact to avoid summary judgment
on the affirmative defense. Nichols v. Smith, 507 S.W.2d 518, 520-21 (Tex. 1974).

 When the trial court does not specify the basis for its summary judgment, the
appealing party must show each independent ground alleged is insufficient to support the
summary judgment granted. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex.
1995).

III. Quasi-Estoppel

 In response to the Association's motion for summary judgment and in their own
motion for summary judgment, the Houghs claimed the Association is estopped from
raising its claims regarding the alleged violation of the restrictive covenants and
architectural rules. We agree.

 In their motion for summary judgment, the Houghs argued:

As stated in the facts above the property that the [Association] claims is in
violation of the Restrictive Covenants was not under common ownership with
Lot 1 until 1989 when it was acquired by the Ringdahls. At that time the
improvements on Lot 2 were already in place and no suit was filed previous
to that time to enjoin the placement or maintenance of the improvements. 
It is the [Houghs'] position that since the improvements on Lot 2 were
constructed prior to the creation of the common ownership between Lots 1
and 2, the [Association's] contention that a severance of the two lots created
a violation of the restriction [sic]. 

In their motion for summary judgment and on appeal, the Houghs also claim: 

 

[The Association] approved and allowed the for [sic] the construction and
placement of the improvements on the property that the Houghs now own. 
Accordingly, since no law suit has heretofore been filed to prohibit the
construction one can only conclude that all provisions of the restrictions have
been complied with. If the [Association] had determined that the placement
of improvements [sic] it would have had to sue to enjoin the owner. The
improvements that the [Assocation] complains about were present [when]
[sic] the [Houghs] purchased their residence in 1995 and the porch is part of
their residence. Removal of the porch would cause the Hough's [sic] to
sustain a drastic change in position. In this situation all of the elements
needed to show the easement has been terminated by estoppel exist. 

Furthermore, according to the permit attached hereto as Exhibit "A" the
[Association] granted the [Houghs] the right to place windows on the porch
section of the residence. And it is very clear on the face of the document
that the property lines were reviewed and approved. (5)


As evidence, the Houghs included a copy of the Association's building permit for the
installation of the windows on the porch, a copy of the vendor/purchaser agreement for the
sale of lot 1 to the Loseys, and two letters from the Association (dated April and July 2002)
concerning the porch and explaining that it had no problem with the Houghs' property as
long as the Houghs owned lots 1 and 2 (or lots 16 and 18). The Houghs also submitted
the affidavit of John Hough, wherein he stated that at the time he acquired the lots, the
improvement (i.e., the porch) was already situated on the property. He attested he
acquired the lots in 1995 from the Ringdalhs and that no lawsuit had been filed against him
or his predecessors regarding any violations of the restrictive covenants. Hough stated
that, at the time he acquired the property, the improvements on the property included the
porch, which extended within five feet of the common boundary line of the two lots. He
further provided:

In the year 2002, I sold one of my lots (Lot 1, Block 12) to Ron and Amy
Losey. I was told by a member of the Association Board that if I sold the
adjacent lot I would be in violation of the restriction, although I was never told
specifically what part of the Restrictive Covenants I was violating. In an effort
to avoid the alleged violation I entered into an agreement with the Loseys
that they would not build their residence within ten feet of my improvements
so as to maintain a proper distance between the property. Notwithstanding
my efforts I was told that I was nevertheless in violation of the restrictions. 
 

I requested that the Association Board authorize me to move the common
boundary line so that a potential violation would not occur. However, the
Board told me that they could not grant a request to change the boundary
line, only the municipal authority could do that. 


 . . . .


At no time has the Association objected to the location of the improvements
on my property until I decided to sell one of my lots. And I am not aware of
any conditional permission granted by the Association that I would be in
violation of the restrictions if I sold the lot until the time that I actually told
them I intended to sell the lot.


 . . . .


The Association has not given me any formal proof that conditional
permission to build the improvements was given to me or any of my
predecessors in title who may have been responsible for constructing the
improvements. 


 Article V of the restrictive covenants in effect in 1983 and in 1995 when the Houghs
acquired the lots, provide, in relevant part: 

1. Before construction or placement of any manufacture or structure on
any of the lots in said Subdivision, the owner of such lot shall submit
the plans and specifications of such permanent or mobile structure to
the Declarant, who shall consider, evaluate, examine, pass upon and
approve or disapprove of or conditionally approve of said plans and
specifications, as required under these restrictions, covenants,
conditions and agreements.


2. The Declarant's approval, disapproval or conditional approval shall be
endorsed upon the plans and specifications submitted by the owner
in writing and returned to the applicant within thirty (30) days after
submission.


3. In the event the Declarant fails to approve or disapprove before the
expiration date, then the owner shall make written demand upon the
Declarant by certified mail, notifying the Declarant that it has not acted
upon the owner's submission and failure to act within thirty (30) days
from the second notice by owner shall be the same as an approval
unless disapproved in writing by Declarant, or in any event, if no suit
to enjoin the construction or placement of the permanent or mobile
structure has been commenced prior to the completion thereof,
written approval of Declarant will not be required, and the related
covenants contained herein shall be deemed to have been complied
with.

 

The Houghs claim the Association is estopped from enforcing the restrictions. They rely
on the doctrine of quasi-estoppel. Quasi-estoppel precludes a party from asserting, to
another's disadvantage, a right inconsistent with a position previously taken by that party. 
Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000). The doctrine
is applicable when it would be unconscionable to allow a party to maintain a position
inconsistent with one in which he acquiesced, or of which he accepted a benefit. Id. 
Quasi-estoppel is a defensive doctrine. Cook Composites, Inc. v. Westlake Styrene Corp.,
15 S.W.3d 124, 136 (Tex. App.-Houston [14th Dist.] 2000, pet. dism'd); see also Sun Oil
Co. v. Madeley, 626 S.W.2d 726, 734 (Tex. 1981)("Estoppel . . . is a defensive theory.");
Watson v. Nortex Wholesale Nursery, Inc., 830 S.W.2d 747, 751 (Tex. App.-Tyler 1992,
writ denied)("Equitable estoppel is defensive in character.").

 

 In the present case, the Association clearly acquiesced to the construction of the
porch as early as 1984. The Association does not dispute the Houghs' contention that,
at the time the porch was built, lots 1 and 2 were separately owned. In addition, the
Houghs presented evidence that the Association further acceded to the porch and to
improvements to the porch when it granted the Houghs permission to install windows
around the porch in 1999. We note that although the Association now argues that the sale
and resulting "severance" of lot 1 caused the porch on lot 2 to be in violation of the
restrictive covenant, the argument is unpersuasive, especially in light of the fact that the
Association does not dispute the contention that it permitted the porch to be built in
violation of the applicable restrictive covenants prior to lots 1 and 2 coming under common
ownership, and at a time when the covenants sought to be enforced were already in
existence. It is inconceivable how or why the Association would come forward twenty-some years later and expect to claim a violation of the restrictive covenants when it clearly
acquiesced to the initial violation. Allowing the Association to assert this position now
would be to the Houghs' disadvantage and would be unconscionable, especially in light of
the fact that the Association permitted the Houghs to further invest money in the porch by
installing windows without the Association voicing its objections until some five years later. 
We conclude the Houghs met their burden to raise an issue of material fact in response
to the Association's summary judgment. We further conclude the Houghs conclusively
proved all the elements of the affirmative defense of quasi-estoppel. Cathey, 900 S.W.2d
at 341.

 In response to their quasi-estoppel defense, the Association merely argued, without
providing reference to evidence in support, 

To the extent [the Houghs] contend that this enforcement action is barred or
precluded by the doctrine of estoppel, consent and/or waiver, this is not true
or correct, as a matter of law, there being no valid defense to the prosecution
of this subdivision covenant enforcement case by [the Association].
(Emphasis original)


The above statement is nothing more than a self-serving conclusory statement. See
Purcell v. Bellinger, 940 S.W.2d 599, 602 (Tex. 1997) (finding that conclusory statements
that are unsupported by facts are not proper summary judgment proof); Brownlee v.
Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). Thus, we conclude the Association failed to
meet its burden to produce evidence raising a genuine issue of material fact to avoid
summary judgment on the affirmative defense. See Nichols, 507 S.W.2d at 520-21. 

 Accordingly, we conclude the trial court erred in granting the Association's summary
judgment and in denying the Houghs' motion for summary judgment. 

IV. Conclusion 

 We reverse the trial court's order granting summary judgment in favor of the
Association and render judgment in favor of the Houghs. We reverse and remand the
issue of attorney's fees to the trial court. 

 __________________________ 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 31st day of August, 2007.

1. We note that the lots are also referred to as lots 16 and 18. For consistency, we will refer to them
as lots 1 and 2. 
2. The Houghs filed a counterclaim for a declaratory action to establish that the Association's easement
had been terminated by estoppel. The Houghs later filed an amended counterclaim suing for a declaratory
action establishing that they were not presently in violation of the restrictions. Alternatively, they claimed that
if a violation of the restrictions did exist, the Association had authorized, accepted, and consented to the
violation. They also argued that the violation of the Rules and Regulations, as alleged by the Association was
not effective because the Restrictive Covenants control over the Rules and Regulations. 
3. In support of its motion for summary judgment and in response to the Houghs' motion for summary
judgment, the Association submitted as evidence copies of the restrictive covenants, architectural rules,
photos of the Houghs' porch demonstrating an encroachment of four feet into the side easement, and the
affidavit of the Association's President, Lee Shelton. 
4. In its order granting the Association's summary judgment, the trial court: (1) declared that the
Houghs violated the covenants and that such violation was subject to correction; (2) mandated that the
violations be corrected by the Houghs; (3) awarded attorney's fees and court costs to the Association; (4)
ordered that the Houghs take nothing under their counterclaims against the Association and that all
counterclaims asserted by the Houghs be dismissed; and (5) ordered that the judgment bear interest at the
rate of 5% from the date of judgment until paid.
5. In their response to the Association's motion for summary judgment, the Houghs also argued that 
"the rules of the Board were already deemed to have been complied with when the Board unconditionally
allowed the Hough's [sic] predecessor's to construct the improvements."